### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MTDB CORP. d/b/a STRIKER LANES,<br><br>*Plaintiff*<br><br>vs.<br><br>AMERICAN AUTOMOBILE INSURANCE COMPANY, D/B/A FIREMAN'S FUND/ALLIANZ,<br><br>*Defendant* | Case Number:<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND REQUEST FOR DECLARATORY RELIEF

Plaintiff MTDB CORP. d/b/a STRIKER LANES, by and through undersigned counsel, states as follows for its Complaint and Request for Declaratory Relief against the Defendant AMERICAN AUTOMOBILE INSURANCE COMPANY, D/B/A FIREMAN'S FUND/ALLIANZ:

### I.  INTRODUCTION

This is a class action brought by Plaintiff MTDB Corp. d/b/a Striker Lanes (herein after "Striker Lanes"), against Defendant American Automobile Insurance Company, d/b/a Fireman's Fund/Allianz (herein after "Fireman's Fund"), related to an insurance policy that insures Plaintiff's property, business operations, and potential liabilities in connection with their business operations, which includes coverage for Business Income ("BI"), Extra Expense ("EE") coverage, and coverage for loss due to the actions of a Civil Authority.

1

Plaintiff made premium payments expecting in its time of need, Fireman's Fund would make good on its contractual obligations under the policy it wrote and issued. Then last month, Plaintiff was forced to shut down its business due to the COVID-19 pandemic. Specifically, effective March 16, 2020, during the term of the policy issued by Fireman's Fund to Plaintiff, Illinois Governor Pritzker issued an order closing all restaurants and bars to the public in an effort to address the pandemic. This has resulted in losses to businesses throughout the state of Illinois. Indeed, many businesses had to alter or shutter operations due to orders from Civil Authorities, such as the Illinois Governor and Director of Public Health. As a result, many insureds filed insurance claims for coverage for loss of BI, EE coverage, and coverage for loss due to the actions of a Civil Authority

Upon information and belief, Fireman's Fund systematically denied and or claimed a reservation of rights refusing to pay on insurance claims brought by Plaintiff —and hundreds of other putative class members —for coverage for losses stemming from the COVID-19 pandemic, including of BI, EE coverage, and coverage for loss due to the actions of Civil Authority. Defendant's decision not to provide coverage and/or its decision to reserve its rights and refuse to pay claims under the common policy form(s) issued to Plaintiff and the putative class members gives rise to Plaintiff's and the putative class members' right to seek declaratory judgment pursuant to 735 ILCS 5/2-701 establishing they are entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the business losses it has sustained.

## II.    PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Striker Lanes is a corporation organized under Illinois law with its principal place of business in Cook County, Illinois.

2.    Defendant American Automobile Insurance Company, d/b/a Fireman's Fund/Allianz is a Missouri company with its principal place of business in California. American Automobile Insurance Company, d/b/a Fireman's Fund/Allianz is an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in Illinois and elsewhere.

3.    The Court has subject matter jurisdiction over this matter under 28 U.S.C. 1332(a), because this matter involves citizens of different states and the amount in controversy exceeds $75,000.

4.    The Court has subject matter jurisdiction over this matter under 28 U.S.C.1332(d)(2) and (6), as amended by the Class Action Fairness Act of 2005, because this matter was brought as a class action, the aggregate claims of the putative Class members exceed $5,000,000, exclusive of interest and costs, and at least one member of the putative Class is a citizen of a different state than American Automobile Insurance Company, d/b/a Fireman's Fund/Allianz.

## III.    FACTUAL SUMMARY

### A. <u>The Insurance Policy</u>

5.    This action is brought by Plaintiff, individually and on behalf of all other similarly situated insureds, who suffered damages that have been denied their contractual rights under common policy forms due to Defendant's decision not to

provide coverage for losses stemming from SARS-CoV-2 virus and or COVID-19, including Business Income ("BI"), Extra Expense ("EE") coverage, and coverage for loss due to the actions of a Civil Authority.

6.      At all times relevant, Fireman's Fund insured Plaintiff pursuant to an insurance policy it drafted.

7.      Striker Lanes is insured pursuant to policy number MZG80998835. A copy of the policy is attached as Exhibit 1 (the "Policy").

8.      The Policy uses standard common forms that contain provisions at issue in this action.

9.      The Insurance Services Office, Inc. ("ISO") publishes policy forms for use by the insurance industry.

10.     The Policy utilizes, in part, policy forms and language published by the ISO, as reflected by the ISO copyright designation at the bottom of numerous pages of the Policy.

11.     Prior to the effective date of the Policy, ISO published and made available for use a standard virus exclusion form.

12.     Defendant Fireman's Fund chose not to include the ISO standard virus exclusion form in the Policy.

13.     Other than reference to a computer virus, the Policy includes no exclusion that references the word virus.

14. Plaintiff's Policy provides coverage for loss of Business Income ("BI"), Extra Expense ("EE") coverage, and coverage for loss due to the actions of a Civil Authority.

15. Relevant portions of the Policy provide, subject to other Policy terms, that Defendant Fireman's Fund:

> a. "…will pay for the actual loss of Business Income you sustain due to the necessary suspension of your operations during the period of restoration. The suspension must be caused by direct physical loss of or damage to property at the premises described in the Declarations, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss."

> b. "…will pay any Extra Expense to avoid or minimize the suspension of business and to continue operations: (a) At the described premises; or (b) At replacement premises or at temporary locations, including: (i) Relocation expenses; and (ii) Costs to equip and operate the replacement or temporary locations. (2) We will pay any Extra Expense to minimize the suspension of business if you cannot continue operations. (3) We will pay any Extra Expense to: (a) Repair or replace any property; or (b) Research, replace or restore the lost information on damaged valuable papers and records; to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form."

> c. "…will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."

16. The term "civil authority" is not defined in the Policy.

17.     Upon information and belief, Defendant's language in the Policy regarding coverage for loss of BI, EE coverage, and coverage for loss due to the actions of a Civil Authority is present in every policy, including but not limited to the Policy issued by Fireman's Fund to Plaintiff, as well as to the putative class members as defined herein also providing coverage for loss of BI, EE coverage, and coverage for loss due to the actions of a Civil Authority.

18.     As typified by Plaintiff's experience, Fireman's Fund chose not to provide coverage for loss of BI, EE coverage, and coverage for loss due the actions of a Civil Authority under claims tendered for losses due to SARS-CoV-2 at, in, on or around insureds' premises, losses due to the spread of SARS-CoV-2 and/or COVID-19 in the community (the "COVID-19 Pandemic"), or losses due to Civil Authority orders issued by the Governor of Illinois and the Illinois Department of Health addressing SARS-CoV-2 and the COVID-19 Pandemic.

19.     While the Policy was in force, Plaintiff sustained, and continues to sustain, loss(es) due to SARS-CoV-2 and COVID-19 at, in, on, and/or around their premises described in the Policy.

20.     While the Policy was in force, Plaintiff sustained, and continues to sustain, loss(es) due to the spread of SARS-CoV-2 and COVID-19 in the community.

21.     While the Policy was in force, Plaintiff sustained, and continues to sustain, losses due to the civil authority orders issued by the Governor of Illinois and the Illinois Department of Health addressing SARS-CoV-2 and COVID-19 Pandemic.

B. <u>The COVID-19 Virus</u>

22.     SARS-CoV-2 is a virus.

23.     SARS-CoV-2 is a physical substance.

24.     SARS-CoV-2 is a human pathogen that causes the disease COVID-19, which can be lethal.

25.     SARS-CoV-2 can be present outside the human body in viral fluid particles.

26.     SARS-CoV-2 can and does remain capable of being transmitted and active on inert physical surfaces for a period of time.

27.     SARS-CoV-2 can and does remain capable of being transmitted and active on floors, walls, furniture, desks, tables, chairs, countertops, computer keyboards, touch screens, cardboard packages, food items, silverware, plates, serving trays, glasses, straws, menus, pots, pans, kitchen utensils, faucets, refrigerators, freezers, and other items of property for a period of time.

28.     SARS-CoV-2 can be transmitted by way of human contact with surfaces and items of physical property on which SARS-CoV-2 particles are physically present.

29.     SARS-CoV-2 has been transmitted by way of human contact with surfaces and items of physical property located at premises in Illinois.

30.     SARS-CoV-2 has been transmitted by human to human contact and interaction at premises in Illinois, including places like bars and restaurants.

31.     SARS-CoV-2 can be transmitted through airborne particles emitted into the air at premises.

7

32.     SARS-CoV-2 has been transmitted by way of human contact with airborne SARS-CoV-2 particles emitted into the air at premises in Illinois.

33.     The presence of any SARS-CoV-2 particles renders items of physical property unsafe.

34.     The presence of any SARS-CoV-2 particles on physical property impairs its value, usefulness and/or normal function.

35.     The presence of any SARS-CoV-2 particles causes direct physical harm to property.

36.     The presence of any SARS-CoV-2 particles causes direct physical loss to property.

37.     The presence of any SARS-CoV-2 particles causes direct physical damage to property.

38.     The presence of any SARS-CoV-2 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function.

39.     The presence of people infected with or carrying SARS-CoV-2 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

40.     The presence of people infected with or carrying SARS-CoV-2 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to the premises and property.

### C. Illinois' Response to COVID-19

41.     In response to SARS-CoV-2 and the COVID-19 Pandemic, the Governor of Illinois has issued multiple executive orders pursuant to the authority vested in him by the Illinois Constitution and the laws of Illinois.

42.     Similarly, the Illinois Department of Health, pursuant to its authority under Illinois law, has issued multiple orders, including a Stay At Home Order.

43.     The State of Illinois is a civil authority as contemplated by the Policy.

44.     The Illinois Department of Health is a civil authority as contemplated by the Policy.

45.     The Governor of the State of Illinois is a civil authority as contemplated by the Policy.

46.     The City of Chicago is a civil authority as contemplated by the Policy.

47.     The Mayor of Chicago is a civil authority as contemplated by the Policy.

48.     On March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic.

49.     On March 15, 2020, Illinois Governor J.B. Pritzker issued Executive Order 2020-07 stating "it is necessary and appropriate for the State of Illinois to immediately take measures to protect the public's health in response to this COVID-19 outbreak." This order was in response to the physical presence of SARS-CoV-2 and the COVID-19 Pandemic.

50.     The stated goal of this order was to slow the spread of SARS-CoV-2 by minimizing in-person interaction in an environment with "frequently used services

in public settings, including bars and restaurants…" The March 15th order further provided that "the ongoing spread of COVID-19 and the danger the virus poses to the public's health and wellness require the reduction of on-premises consumption of food and beverages."

51.     On March 20, 2020, Governor Pritzker issued a Closure Order (Executive Order 2020-10) (a.k.a., a Stay At Home Order) requiring all Illinois residents to stay at home barring exceptions such as essential travel for essential work or supplies, exercise and recreation, through April 7, 2020. Moreover, the March 20th order reduced the allowable public and private gathering size to no more than 10 people. The March 20th order was again in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiffs' premises.

52.     On March 26, 2020, Chicago Mayor Lori Lightfoot shut down Chicago's most popular gathering spots, including the entire lakefront and all its parks, bike trails and beaches.

53.     On April 8, 2020, Mayor Lightfoot issued a sweeping curfew order, with no definite end date, on all liquor sales across Chicago, banning sales after 9:00 p.m.

54.     On April 23, 2020, Governor Pritzker announced the statewide Stay At Home order previously set to expire April 30, 2020, was extended through May 29, 2020.

### D. Illinois' Exercise of Civil Authority Closes Plaintiff's Businesses

55.     Plaintiff's business does not qualify as Essential Businesses and was required to cease and/or significantly reduce operations at all its locations.

10

56.     The civil authority orders, including, but not limited to the Stay At Home Order currently in effect, prohibit access to Plaintiff's premises described in the Policy.

57.     The State of Illinois, through the Governor and the Department of Health, have issued, and continue to issue, authoritative orders governing Illinoisans and Illinois businesses, including Plaintiff's, in response to SARS-CoV-2 and the COVID-19 Pandemic, the effect of which have required and continue to require Plaintiff to cease and/or significantly reduce operations at, and that have prohibited and continue to prohibit access to, the premises described in the Policy.

58.     State and local governmental authorities, and public health officials around the Country, acknowledge that SARS-CoV-2 and the COVID-19 Pandemic cause direct physical loss and damage to property.  For example:

> a. The state of Colorado issued a Public Health Order indicating that "COVID-19... physically ***contributes to property loss, contamination, and damage***..." (Emphasis added);
>
> b. The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus ***physically is causing property loss and damage***." (Emphasis added);
>
> c. Broward County, Florida issued an Emergency Order acknowledging that COVID-19 "***is physically causing property damage***." (Emphasis added);
>
> d. The State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression... remains a public disaster affecting life, health, [and] ***property***..." (Emphasis added);

e. The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to ***physically*** impact surfaces and personal ***property***." (Emphasis added);

f. The City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and ***causing property loss and damage*** in certain circumstances." (Emphasis added);

g. The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "***property***." (Emphasis added);

h. North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of… ***property***." (Emphasis added); and

i. The City of Los Angeles issued an Order in response to COVID-19 "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is ***physically causing property loss or damage*** due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

59. SARS-CoV-2 and the COVID-19 Pandemic are physically impacting public and private property in Illinois and throughout the country.

60. SARS-CoV-2 and the COVID-19 Pandemic have caused and continue to cause direct physical loss and damage to property.

61. People in Illinois have been diagnosed with SARS-CoV-2.

62. People in Illinois have, and have had, SARS-CoV-2 but have not been diagnosed.

63.     People in Illinois have SARS-CoV-2 particles on or about their person and personal property.

64.     Properties and premises throughout Illinois contain the presence of SARS-CoV-2 particles on surfaces and items of property.

65.     It is probable that SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

66.     It is probable that SARS-CoV-2 particles have been physically present on surfaces and items of property located at Plaintiff's premises described in the Policy during the time the Policy were in effect.

67.     It is probable that airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the was in effect.

68.     It is probable that people carrying SARS-CoV-2 particles in, on or about their person have been present at Plaintiff's premises described in the Complaint during the time the Policy was in effect.

69.     It is probable that airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

70.     Plaintiff has sustained direct physical loss and damage to items of property located at its premises and direct physical loss and damage to its premises described in the Policy as a result of the presence of COVID-19 particles and/or the Pandemic.

71. Plaintiff submitted a timely insurance claim to Defendant, Fireman's Fund.

Defendant, Fireman's Fund, has denied Plaintiff's claims.

## IV. CLASS ALLEGATIONS

72. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), Plaintiff bring this action on behalf of themselves and the following class (the "Class") of similarly situated persons:

> All Illinois businesses insured under a policy issued by Fireman's Fund with the same operative language as policy form number MZG80998835 with Business Interruption, Extra Expense and Civil Authority coverage who were denied coverage or met with a reservation of rights arising out of a claim(s) for SARS-CoV-2, COVID-19, the COVID-19 Pandemic and/or Illinois' civil authority "stay at home" order related losses.

73. The following are Excluded from the Class: Defendant, including any parent, subsidiary, affiliate, or controlled person of Defendant; Defendant's officers, directors, agents, or employees; and the judicial officers assigned to this litigation, and any members of their staffs and immediate families.

74. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses, if necessary, before this Court determines whether certification is appropriate.

### A. Numerosity

75. The precise number of class members for the Class are unknown to Plaintiff at this time but can be easily determined through appropriate discovery.

14

Plaintiff believes that because Defendant is a large insurer with a notable presence in the State of Illinois and – upon information and belief – writes millions of dollars of business coverage premiums, the class of businesses affected by Defendant's practices described herein consists of hundreds of businesses or the class of businesses affected are otherwise so numerous that joinder of all Class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits properly owed to Plaintiff and the Class members. The class definition will permit the court to reasonably ascertain whether any individual or entity is a member of the class as any individual who or entity that is insured by Defendant and was denied coverage for SARS-CoV-2 related losses covered by BI, EE, or Civil Authority provisions.

76. Upon information and belief, Defendant uniformly refuses to pay insureds for SARS-CoV-2 related losses covered by BI, EE, and/or Civil Authority provisions of its business insurance policies. Accordingly, the Class consists of many hundreds, if not thousands, of Defendant's insureds who were not paid or afforded coverage under the terms of their insurance policies. Thus, pursuant to Federal Rules of Civil Procedure 23(a)(1), the large size of the Class renders the Class so numerous that joinder of all individual members is impracticable.

## B. Commonality

77. Common questions of law and fact predominate in this matter because Defendant's conduct towards the members of the Class is identical. Defendant

uniformly refuses to pay for losses covered by BI, EE, and/or Civil Authority provisions arising from SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic. Indeed, upon information and belief, Defendant responds to every claim at issue with an identical or near identical form letter reserving its rights and refusing to honor the claim(s).

78. Plaintiff shares a common interest with all members of the putative Class in the objects of the action and the relief sought.

79. Plaintiff satisfies Federal Rules of Civil Procedure 23(a)(2)'s commonality requirement because its claims arise from a practice which Defendant applies uniformly to all the similarly situated Class members and are based on the same legal theories as all other members of the putative class, that coverage for SARS-CoV-2 related losses of BI, EE coverage, and coverage for loss due to the actions of a Civil Authority. Because Defendant's conduct was and is uniform as to all Class members, the material elements of Plaintiff's claims and those of absent class members are subject to common proof, and the outcome of Plaintiff's individual actions will be dispositive for the Class. The common questions include, but are not limited to, the following: (1) whether SARS-CoV-2 can cause direct physical loss or damage to property as stated in the common policy forms at issue; (2) whether SARS-CoV-2 and/or COVID-19 is a covered cause of loss under the Policy; (3) whether the COVID-19 Pandemic is a covered cause of loss under the Policy; (4) whether the losses incurred by insureds as the result of the orders issued by the Governor of Illinois and the Illinois Department of Health are covered losses under the Policy; (5) whether

16

insureds are entitled to coverage for their past and future Business Income loss(es) and Extra Expense resulting from SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic for the time period set forth in their Policy; (6) whether insureds are entitled to coverage for loss(es) due to the actions of Illinois' civil authorities, including the Governor of Illinois and the Illinois Department of Health; and (7) whether insureds have coverage for any substantially similar civil authority order in the future that limits or restricts the access to insureds places of business and/or their operations.

### C. <u>Typicality</u>

80.     Pursuant to Federal Rules of Civil Procedure 23(a)(3), Plaintiff's claims are typical of the claims of all other members of the Class because all such claims arise from the Defendant's failure to provide coverage for losses covered by BI, EE, and/or Civil Authority provisions.

81.     Plaintiff and Class members' legal claims arise from the same core practices, namely, the refusal to provide coverage for SARS-CoV-2 related losses covered by BI, EE, and/or Civil Authority provisions. The material facts underlying the claims of each putative class member are the same material facts as those supporting the Plaintiff's claims alleged herein and require proof of the same material facts.

### D. <u>Adequacy</u>

82.     Plaintiff can and will adequately represent the putative class and its interests are common to, and coincident with, those of all absent class members. By

proving its individual claims, Plaintiff will necessarily prove the claims of the putative class and prove Defendant's liability to the Class. Plaintiff has no known conflicts of interest with any members of the Class; their interests and claims are not antagonistic to those of any other class members; nor are their claims subject to any unique defenses.

83. The representative Plaintiff therefore can and will fairly and adequately protect and represent the interests of the Class under the criteria set forth in Federal Rules of Civil Procedure 23(a)(4).

84. Plaintiff's counsel—Romanucci & Blandin, LLC, Spangenberg, Shibley & Liber, LLP, and Rutter & Russin, LLC—have extensive experience in complex commercial litigation, insurance coverage dispute litigation, class actions, and have adequate financial resources to ensure that the interests of the Class will not be harmed.

85. If appointed class representatives, Plaintiff are aware of, and are committed to, faithfully upholding their fiduciary duties to absent Class members. Plaintiff and their counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the class is fairly represented.

86. Plaintiff and their counsel will therefore fairly and adequately assert and protect the interests of the Class.

### E. <u>Declaratory Relief Under Rule 23(b)(1)(A)</u>

87.    Pursuant to Federal Rules of Civil Procedure 23(b)(1)(A), class treatment is warranted because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the class.

88.    Defendant's standardized language in the Policy and forms at issue regarding coverage for loss BI, EE coverage, and coverage for loss due to the actions of a civil authority is present in every Fireman's Fund policy issued by Defendant to the putative Class members that provides for coverage for loss of BI, EE coverage, and coverage for loss due the actions of a Civil Authority.

89.    As a result, separate actions brought by individual Class members would possibly lead to a situation where identical language is interpreted differently.

### F. <u>Declaratory Relief Under Rule 23(b)(2)</u>

90.    Pursuant to Federal Rules of Civil Procedure 23(b)(2), class treatment is warranted because Defendant has acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

91.    Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter

Defendant and other similar businesses from engaging in such wrongful conduct in the future.

92. Because Defendant has acted consistently towards all members of the Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

93. Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

## COUNT I: DECLARATORY JUDGMENT

94. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

95. Plaintiff brings this count on behalf of themselves and all members of the Class.

96. There is a dispute about whether Plaintiff and the Class members are entitled to coverage under the Policy for their loss(es) sustained and to be sustained in the future as described herein. Accordingly, Plaintiff is entitled to declaratory relief from this Court pursuant to 735 ILCS 5/2-701 on behalf of itself and the Class.

97. Plaintiff is entitled to and demand a declaration that:

    a. Plaintiff and the Class members sustained direct physical loss or damage to property at theirs premises described in the Policy as a result of SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic;

    b. SARS-CoV-2 and/or COVID-19 is a covered cause of loss under the Policy;

    c. The COVID-19 Pandemic is a covered cause of loss under the Policy;

d. The losses incurred by Plaintiff and the Class members as the result of the orders issued by the Governor of Illinois and the Illinois Department of Health are covered losses under the Policy;

e. Defendant Fireman's Fund has not and cannot prove the application of any exclusion or limitation to the coverage for Plaintiff and the Class members losses alleged herein;

f. Plaintiff and the Class members are entitled to coverage for their past and future Business Income loss(es) and Extra Expense resulting from SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic for the time period set forth in the Policy;

g. Plaintiff and the Class members are entitled to coverage for loss(es) due to the actions of Illinois civil authorities, including the Governor of Illinois and the Illinois Department of Health;

h. Plaintiff and the Class members have coverage for any substantially similar civil authority order in the future that limits or restricts the access to Plaintiff or the Class members' places of business and/or their operations; and

i. Any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.

98.     Plaintiff and the Class members do not seek a determination of their damages resulting from SARS-CoV-2, the COVID-19 or the COVID-19 Pandemic. If there is a dispute between the parties as to the amount of the loss, the Policy provides that such a dispute should be resolved by **Appraisal**:

**Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the

loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a. Pay its chosen appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally.

99. If there is an appraisal, we still retain our right to deny the claim.

100. Plaintiff, individually and on behalf of those similarly situated, prays for declaratory relief from the Court that Defendant Fireman's Fund must resolve any dispute about the amount of loss via Appraisal. Plaintiff also requests the Court to appoint the umpire if the appraisers cannot agree.

101. Plaintiff, individually and on behalf of those similarly situated, prays for any further relief the Court deems proper, including attorney fees, interest, and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

WHEREFORE, Plaintiff, individually and on behalf of those similarly situated, seeks judgment against Defendant Fireman's Fund, as set forth above, plus interest, costs, and attorney fees as allowed by law.

## DEMAND FOR TRIAL BY JURY

Dated: May 22, 2020                                 Respectfully Submitted,

                                            By:/s/ *Antonio M. Romanucci*
                                          Attorney for the Plaintiff

Antonio M. Romanucci
Gina A. Deboni
David A. Neiman

22

**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Suite 900
Chicago, IL  60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
gad@rblaw.net
dneiman@rblaw.net

Nicholas A. DiCello (OH Bar 0075745, Pro Hac Vice motion forthcoming)
Dennis R. Lansdowne (OH Bar 0026036, Pro Hac Vice motion forthcoming)
Stuart Scott (OH Bar 0064834, Pro Hac Vice motion forthcoming)
Jeremy A. Tor  (OH Bar 0091151, Pro Hac Vice motion forthcoming)
**SPANGENBERG, SHIBLEY & LIBER, LLP**
1001 Lakeside Ave., Suite 1700
Cleveland, Ohio 44114
ndicello@spanglaw.com
dlansdowne@spanglaw.com
jtor@spanglaw.com

Robert P. Rutter (OH Bar 0021907, Pro Hac Vice motion forthcoming)
Robert A. Rutter (OH Bar 0081503, Pro Hac Vice motion forthcoming)
**RUTTER & RUSSIN, LLC**
One Summit Office Park, Suite 650
4700 Rockside Road
Cleveland, Illinois 44131
(216) 642-1425
brutter@IllinoisInsuranceLawyer.com

23